**\*\*E-filed 06/28/2010\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL BOCK and LORIE BOCK,<br><br>    Plaintiffs,<br>    v.<br><br>TRAVELERS PROPERTY CASUALTY<br>INSURANCE COMPANY,<br><br>    Defendant. | No. C 10-0722 RS<br><br>**ORDER GRANTING MOTION FOR<br>JUDGMENT ON THE PLEADINGS** |

I. INTRODUCTION

This case entails a series of events flowing from some seriously flawed information. Plaintiffs Michael and Lorie Bock obtained a survey that showed their legal property line as running through their house rather than along the fence. As a result, the Bocks eventually initiated litigation seeking to be declared the rightful owners of all the property on their side of the fence, notwithstanding the actual property line. Lengthy and expensive trial and appellate proceedings ensued. On the eve of retrial, the Bocks discovered that the initial survey had been wrong, and that the property line did run along the fence after all.

In this action the Bocks seek to hold their homeowner's insurance company liable for its refusal to provide them a defense to their neighbors' counterclaims during the property line

1  litigation. Because the allegations of the complaint show that the insurer acted within its rights to
2  deny coverage, its motion for judgment on the pleadings will be granted.

## II.  BACKGROUND

Lori Bock purchased her home located at 415 College Avenue in Angwin, California in 1978.  At the time, and continuing into the present, a fence separated that property from 417 College Avenue.   Michael Bock became a co-owner in 1988.

For reasons not disclosed in the pleadings, in 1996 Albion Surveys conducted a survey finding that the legal boundary between 415 and 417 College Avenue actually ran through part of the Bocks' home.  The Bocks disclosed this survey to the then-owner of 417 College Avenue, but the parties thereafter continued to treat the fence as the boundary between their properties.

In 2005 Brian and Gretchen Brakesman were the owners of 417 College Avenue.  The Bocks sought and obtained the Brakesmans' approval to build a carport up to the fence line. Subsequently, however, the Brakesmans had a change of heart because rainwater runoff from the carport roof was damaging property on their side of the fence.

The Bocks responded by seeking an official variance from county set back requirements.  As part of that application, the Bocks were required to get another survey and retained Michael Brooks & Associates for that purpose.  The Brooks survey was based in part on the Albion survey and came to the same conclusion.  Learning of the Brooks survey, the Brakesmans then took the position that the Bocks had been trespassing and that the carport was an encroachment on their property.

The Bocks initiated suit seeking to quiet title to all the property on their side of the fence, based on adverse possession and on agreed-boundary principles.  The Brakesmans cross-complained, seeking damages for trespass, among other things.  The Brakesmans' cross-complaint generally alleged that their property had been "damaged" by the Bocks' "entry thereon," but it made no mention of damage from water runoff.

The Bocks promptly tendered defense of the cross-complaint to Travelers Property Casualty Insurance Company, the issuer of their homeowner's policy.  Within a week, Travelers rejected the tender, asserting that the Bocks' intentional construction of a carport on the Brakesmans' property

was not an "occurrence" within the meaning of the policy, and that it would be subject to an exclusion for intentional acts in any event. Although Travelers invited the Bocks to submit any additional information they had bearing on coverage, there is no indication they did so. Specifically, there is no indication that at any time prior to instituting *this* suit the Bocks ever told Travelers that the Brakesmans were contending water runoff from the carport roof had damaged their property.

The dispute between the Bocks and the Brakesmans went to trial in January of 2007. After a two day bench trial, the court entered judgment for the Brakesmans. In September of 2008, the appellate court reversed in part, and remanded for a new trial. Because the appellate opinion nonetheless required removal of the carport to an appropriate set back, the Bocks were asked by the county planning department to commission yet another survey. They hired Bryan Taylor, who thereafter gave the "flabbergasted" Bocks the news that the prior surveys both had been wrong, and that the fence indeed marked the actual property line.

The Bocks and the Brakesmans then settled their dispute on the eve of the retrial, with the Bocks giving the Brakesmans an easement over part of their driveway. The matter was re-tendered to Travelers prior to finalizing the settlement, but Travelers again denied coverage. As before, there is no indication that Travelers was ever told about the Brakesmans' claims relating to water runoff.

The four years of litigation exhausted the Bocks' financial resources. One of their prior attorneys has obtained a judgment lien against their home. They contend their credit rating has been ruined and that they are crippled financially.

III. LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is a "means to challenge the sufficiency of the complaint after an answer has been filed." *New.Net, Inc. v. Lavasoft*, 356 F.Supp.2d 1090, 1115 (C.D.Cal. 2004). A motion for judgment on the pleadings is functionally identical to the standard applied in a motion to dismiss. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be

1 resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1990).

## IV.  DISCUSSION

Travelers' position is simple: the Brakesmans' cross-complaint alleged property damage solely as the result of the Bocks' encroachment on their property, and case law establishes that encroachment simply is not an "accident" within the meaning of liability insurance policies. Travelers relies on *Fire Insurance Exchange v. Superior Court*, 181 Cal.App.4th 383 (2010), which issued long after Travelers denied coverage but which expressly holds that, "[b]uilding a structure that encroaches onto another's property is not an accident even if the owners acted in the good faith but mistaken belief that they were legally entitled to build where they did." *Id.* at 390.

The *Fire Insurance* court examined a trio of decisions from this court that also involved encroachment claims.  In two, *Allstate Ins. Co. v. Salahutdin* 815 F.Supp. 1309 (N.D.Cal.1992) and *Bailey v. State Farm Ins. Co.* 810 F.Supp. 267 (N.D.Cal.1992), the courts similarly concluded that the intentional nature of the conduct precluded coverage under liability policies that defined "occurrence" as an "accident."   The third decision, *Allstate Insurance Co. v. Vavasour*, 797 F.Supp. 785 (N.D.Cal.1992) reached a different result by taking into account the alleged trespassers' state of mind.  *Vavasour* reasoned where the trespassers had no "inkling" they were not on their own property, the incursion could be considered "accidental."  *Id*. at 788.

Although the *Vavasour* court attempted to distinguish *Salahutdin*, and *Bailey* attempted to distinguish *Vavasour*, the *Fire Insurance* court observed that the distinctions "can only be characterized as strained." 181 Cal.App.4th at 395.  The *Fire Insurance* court went on to conclude:

> [W]e find the reasoning of *Salahutdin* and *Bailey* to be the more persuasive and are in accord with principle in California that the term "accident" refers to the nature of the conduct itself rather than to its consequences. *Vavasour* stands out in singular contrast to the prevailing rule.

*Id.*

Here, although the Bocks emphasize *Vavasour* and Travelers argues it is an outlier, the facts do not require a determination as to whether it represents good law.  Given that the Bocks were

aware of the Albion survey when they began constructing their carport, they had at least an "inkling" that they potentially were trespassing on the Brakesmans' property. The Bocks argue that their complaint against the Brakesmans alleged that they had constructed the carport on their own property and that it was therefore improper for Travelers to conclude that they had knowingly trespassed. As it turns out, of course, the Bocks had not trespassed at all, but at the time, the allegation that they constructed the carport on their own property was merely consistent with their quiet title claim, it did not somehow mean they were unaware that the Albion survey had shown the property line to be well inside their side of the fence. Thus, the Bocks cannot bring themselves within the facts of *Vavasour.*

Perhaps recognizing that case law does not support coverage for the mere act of constructing the carport, the Bocks' primary argument in opposition to this motion is that had Travelers conducted any sort of investigation into the claims the Brakesmans were making, it would have discovered their complaint that the carport had been constructed in a manner that caused rainwater run-off that allegedly was damaging neighboring property. For purposes of this motion, Travelers does not dispute that *if* it had learned the Brakesmans were so contending, there would have been a duty to defend. Travelers argues, however, that it had no duty to consider anything beyond the contents of the Brakesmans' pleading and any other relevant extrinsic facts *already known to it.*

Travelers correctly states the law. "After receiving a tender of defense, the insurer satisfies its duty to investigate by considering the complaint and the terms of the policy. Although extrinsic facts may also give rise to a duty to defend, such facts must be known at the time of tender and must reveal a potential for liability." *Baroco West, Inc. v. Scottsdale Ins. Co.*, 110 Cal.App.4th 96, 103 (2003). Travelers had no obligation to undertake any further inquiry that might have uncovered the fact that the Brakesmans were complaining about water runoff.[1]

The Bocks rely on cases such as *Frommoethelydo v. Fire Ins. Exch.*, 42 Cal.3d 208 (1986) and *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* 78 Cal.App.4th 847 (2000),

---

[1] The record does not establish when the Bocks learned that water runoff was a focus of the Brakesmans' complaint, although the implication is that it was the problem from the outset. If so, it is unclear why the Bocks' counsel did not advise Travelers of that fact when invited to submit any additional information bearing on coverage.

for the proposition that Travelers was obligated to conduct a more active and robust investigation, potentially interviewing witnesses or at least the Bocks themselves. In *Frommoethelydo*, the insurer was held to have breached a duty to investigate only after it was advised there were witnesses with factual information undermining the insurer's prior conclusion that the insured had submitted a false claim. 42 Cal. 3d at 220. In *Shade Foods*, the insurer conducted an incomplete investigation into a disputed factual matter, then ignored protests from the insurance agent that it had gotten the facts wrong. 78 Cal.App.4th at 881-82. The insurer also treated the matter solely as a third-party liability claim, without considering whether there was first party coverage. *Id.* Thus, while both these cases are consistent with the principle that an insurer may not disregard relevant extrinsic facts that it already possesses or that are subsequently provided to it, the Bocks have not pointed to any authority that would impose on Travelers a duty to do more than it did under the circumstances here. Accordingly, the facts alleged in the complaint herein show that Travelers had no duty to provide a defense for the Bocks.

## V.  CONCLUSION

The motion for judgment on the pleadings is granted.   A separate judgment will issue.

IT IS SO ORDERED.

Dated: 06/2

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

6